**PUBLISHED**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**


**IN RE LAMBERT OIL
COMPANY, INC.,**

        Debtor.

─────────────────────────

| | |
|---|---|
| **WILLIAM E. CALLAHAN, JR.,** ) | |
| **TRUSTEE**, ) | Case No. 1:06CV00045 (Lead) |
| ) | |
|    Appellant and Cross-Appellee, ) | |
| ) | **OPINION** |
| v. ) | |
| ) | By: James P. Jones |
| **PETRO STOPPING CENTER #72,** ) | Chief United States District Judge |
| ) | |
|    Appellee and Cross-Appellant. ) | |

*William E. Callahan, Jr., Roanoke, Virginia, for Appellant and Cross-Appellee; John M. Lamie, Browning Lamie & Gifford, P.C., Abingdon, Virginia, for Appellee and Cross-Appellant.*

In these consolidated bankruptcy appeals, a bankruptcy trustee seeks to avoid as preferential certain prepetition transfers by the debtor. The primary issues on appeal are (1) whether the portions of the transfers ultimately destined to pay the Virginia fuel tax and petroleum storage tank fund fee meet the antecedent debt requirement of the Bankruptcy Code and (2) whether the transfers in general are

excepted from avoidance as (a) contemporaneous exchanges for new value or (b) debts incurred in the ordinary course of business.

I first hold that the bankruptcy court's decision that the portions of the transfers ultimately destined to pay the Virginia fuel tax and petroleum storage tank fund fee did not meet the requirements of a preferential transfer was in error. Second, I find that the bankruptcy court was correct in its conclusion that the transfers in general are not excepted from avoidance under either the exception for a contemporaneous exchange for new value or the exception for debts incurred in the ordinary course of business. Accordingly, I remand the case with instructions to add the amount of the transfers ultimately intended for payment of the tax and fee to the sum previously awarded by the bankruptcy court.

I. BACKGROUND.

Lambert Oil Company, Inc. ("Lambert Oil"), filed a petition under Chapter 11 of the Bankruptcy Code on March 24, 2003. The bankruptcy court converted the case to Chapter 7 on September 16, 2003. William E. Callahan, Jr., (the "Trustee") was appointed trustee. The Trustee filed an adversary proceeding in the bankruptcy court against Petro Stopping Center #72 ("Petro") on March 23, 2005, seeking the

Case 1:06-cv-00045-JPJ   Document 11   Filed 08/03/06   Page 2 of 21   Pageid#: 448

avoidance and recovery of certain prepetition transfers made by Lambert Oil to Petro. *See* 11 U.S.C.A. §§ 547(b); 550(a) (West 2004 & Supp. 2006).

The bankruptcy court held a trial on November 22, 2005, and entered judgment in favor of the Trustee against Petro in the amount of $44,832 on December 28, 2005. Both parties filed timely appeals, which have been consolidated. The parties briefed the issues and oral argument was held on June 20, 2006. The appeals are now ripe for decision.[1]

## II. FACTS.

The facts are largely undisputed. Lambert Oil was in the business of operating retail convenience stores where it sold gasoline and diesel fuel. Nick Lambert ("Lambert") was the president and sole shareholder of Lambert Oil at all relevant times. Petro is also in the business of selling retail gasoline and diesel fuel and operates a retail convenience store, restaurant, and repair shop. Lambert was a fifty percent owner of Petro and its managing member.

Presumably due to the financial difficulties of Lambert Oil, Lambert, in his capacities as the president of Lambert Oil and the managing member of Petro, created

---

[1]    This court has jurisdiction pursuant to 28 U.S.C.A. § 158(a) (West 1993 & Supp. 2006).

-3-

an arrangement wherein Petro would use its good credit to buy fuel and transfer it to Lambert Oil without markup. To accomplish these transactions, an employee of Lambert Oil would instruct a trucking company to pick up fuel at Marathon Ashland, one of Petro's fuel suppliers, and charge Petro's account. The fuel would be delivered to one of Lambert Oil's retail locations, but the invoice sent to Petro. Each invoice would list the date upon which the supplier would electronically draft Petro's bank account for the cost of that fuel shipment and a later date upon which Petro's account would be drafted for the separate cost of the applicable Virginia fuel tax and Virginia petroleum storage tank fund fee.[2]

In theory, Lambert Oil was to pay Petro for the cost of the fuel and applicable tax and fee relating to each purchase prior to the date of the first electronic draft on Petro's account so that Petro would be financially unaffected by these transactions. However, Lambert Oil was only successful in paying Petro prior to the first draft on two occasions, and on the other occasions payment lagged behind the first draft on Petro's account between four and thirteen days. Lambert Oil always paid Petro for the tax and fee associated with each purchase before the second draft on Petro's account to pay for such tax and fee.

---

[2] Virginia imposes a tax upon gasoline and diesel fuel as well as a petroleum storage tank fund fee that is administered in the same manner as the tax. *See* Va. Code Ann. §§ 58.1-2217 (2004), 62.1-44:34.13 (2001).

Certain payments from Lambert Oil to Petro pursuant to this arrangement were made within ninety days preceding the bankruptcy filing. Accordingly, the Trustee initiated the present adversary proceeding to recover these payments on the ground that they constitute avoidable preferential transfers under § 547 of the Bankruptcy Code. In connection with the adversary proceeding, the Trustee and Petro stipulated that, subject to any defenses Petro may prove, the transfers at issue, totaling $61,945.11, satisfied each requirement of § 547(b)(1) through (5), with one exception. The parties left for the decision of the bankruptcy court the question of whether the portion of each of the transfers from Lambert Oil to Petro that went to the Virginia tax and fee, totaling $17,113.11 of the $61,945.11, satisfied the requirement of § 547(b)(2) that the transfer be "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C.A. § 547(b)(2).

The bankruptcy court found that the payments covering the tax and fee were not "for or on account of an antecedent debt" owed to Petro and thus did not constitute recoverable preferential transfers. The bankruptcy court had three alternate rationales for this holding. First, the bankruptcy court found that the trucking companies that picked up the fuel from Petro's suppliers were acting as Lambert Oil's agents. Because of this fact, the court found that Lambert Oil was the entity legally liable to the state for payment of the tax and fee. See Va. Code Ann. § 58.1-2219(B)

Case 1:06-cv-00045-JPJ   Document 11   Filed 08/03/06   Page 5 of 21   Pageid#: 451

(2004) (assessing the tax against "the person that first receives the fuel upon its removal from the terminal").  Therefore, the court held that the monies paid for the tax and fee were not antecedent debts that Lambert Oil owed to Petro, but rather were debts that Lambert Oil owed Virginia which it simply paid via Petro.  Second, the bankruptcy court held that because Lambert Oil paid Petro the money earmarked for the tax and fee before the amounts were actually due, they were not on account of "antecedent debts" within the reach of § 547.  Lastly, the bankruptcy court explained that Petro's payment of the tax and fee to Virginia, in good faith and without knowledge of the avoidability of the transfers, secured Petro's entitlement to the protection of § 550(b)(1) of the Bankruptcy Code.  11 U.S.C.A. § 550(b)(1) (West 2004).

After finding that the $17,113.11 attributable to the tax and fee was not avoidable, the bankruptcy court went on to consider whether there were any defenses to the avoidance of the remainder of the $61,945.11 which all parties agreed would constitute avoidable preferential transfers absent a defense.  The bankruptcy court found that the parties' agreement was clearly intended to be a credit arrangement whereby Petro would extend credit to Lambert on a short-term basis.  Thus, the bankruptcy court concluded that the transactions did not qualify for the contemporaneous transfer for new value defense.  The court explained that if the

-6-

parties had intended a contemporaneous exchange of value, Lambert Oil would have paid Petro prior to or at the time of picking up the fuel rather than days or weeks later. The bankruptcy court then held that the ordinary course of business defense was not available because the transactions in question were not at arm's length given that Petro received no benefit and Lambert Oil gave no consideration. Lastly, the court decided that prejudgment interest was inappropriate. The award of prejudgment interest is in the discretion of the court based on the equities of the case, and the bankruptcy court found that such an award was not justified here.

Based on these rulings, the bankruptcy court entered an order in favor of the Trustee in the amount of $44,832.00. Both parties filed motions to reconsider. The Trustee disagreed with the ruling regarding the monies earmarked for the tax and fee, and Petro disagreed with the rulings regarding the availability of the contemporaneous exchange for new value and ordinary course of business defenses. The bankruptcy court denied the motions, and these appeals followed.

III. ANALYSIS.

A.

A district court reviews the factual finding of a bankruptcy court under a clearly erroneous standard. *See* Fed. R. Bankr. P. 8013. Accordingly, all factual

findings of the bankruptcy court in the instant case must be upheld unless after reviewing the record below, this court is "left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). In contrast, a district court must review a bankruptcy court's decisions of law de novo. *Resolution Trust Corp. v. Murray (In re Midway Partners)*, 995 F.2d 490, 493 (4th Cir. 1993). With these standards in mind, I will address each party's arguments regarding the application of § 547 to the this case.

Before analyzing each party's contentions, it is helpful to set forth the statutory framework outlining the relevant law on preferential transfers. In pertinent part, § 547(b) of the Bankruptcy Code provides that:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made–

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if–

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C.A. § 547(b).

This section allows the bankruptcy trustee to avoid certain preferential transfers of the debtor's property made before the debtor filed for bankruptcy relief, thereby preserving a financially distressed debtor's estate so that the assets may be distributed fairly among all creditors. *See, e.g., De Rosa v. Buildex Inc. (In re F&S Cent. Mfg. Corp.)*, 53 B.R. 842, 846 (Bankr. E.D.N.Y. 1985). Even if all five requirements of preferential transfers are met, however, § 547(c) provides certain exceptions. Relevant to the case at hand are the "contemporaneous exchange for new value" and "ordinary course of business" exceptions, contained in § 547(c)(1) and (c)(2), which are intended to insulate from a trustee's attack those prepetition payments that do not bear the hallmark of payments made under a creditor's duress or the debtor's intent

-9-

to favor.  *See* 11 U.S.C.A. § 547(c)(1)-(2).  The defendant has the burden of proving the applicability of these defenses.

If the trustee satisfies his initial burden of establishing five requirements of avoidability and the defendant fails to prove an exception applies, § 550 authorizes the trustee to recover the property transferred or its value under certain circumstances. Specifically, § 550 provides, in pertinent part, that:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 547 . . . of this title . . . , the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from–
>
>> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>>
>> (2) any immediate or mediate transferee of such initial transferee.
>
> (b) The trustee may not recover under section (a)(2) of this section from–
>
>> (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
>>
>> (2) any immediate or mediate good faith transferee of such transferee.

11 U.S.C.A. § 550(a)-(b).

B.

In his appeal, the Trustee argues that the bankruptcy court was in error when it decided that the portion of Lambert Oil's transfers that was in payment of the Virginia tax and fee was not "for or on account of an antecedent debt" and thus not a preferential transfer under § 547. I agree. In order to satisfy the antecedent debt element, the Trustee must show that Lambert Oil owed a debt to Petro for the tax and fee and that the debt was incurred before the transfer paying it was made. *See Smith v. Arthur Andersen L.L.P.*, 175 F. Supp. 2d 1180, 1202 (D. Ariz. 2001). As explained below, regardless of which party was legally responsible under Virginia law for the tax and fee, I find that Lambert Oil incurred a debt to Petro for those amounts when it used Petro's credit account to purchase fuel.

The bankruptcy judge believed that in order to determine whether the portions of the payments made by Lambert Oil to Petro attributable to the tax and fee were "for or on account of an antecedent debt" and thus preferential transfers turned on whether Petro or Lambert Oil was the party legally responsible to pay such obligations to the state under Virginia law. However, for reasons explained below, I find that this determination is irrelevant to the ultimate resolution of whether the payments in question were preferential transfers.

-11-

Virginia imposes a tax upon gasoline and diesel fuel and a petroleum storage tank fund fee that is administered in the same manner as the tax. *See* Va. Code Ann. §§ 58.1-2217, 62.1-44:34.13. The tax and fee are imposed at the point that the fuel is removed from a supply terminal. Va. Code Ann. § 58.1-2218 (2004). A related statute provides that:

> The tax imposed pursuant to § 58.1-2217 [and the underground tank fee imposed pursuant to § 62.1-44:34.13] at the point that motor fuel is removed at a terminal rack in Virginia shall be payable by the person that first receives the fuel upon its removal from the terminal. If the motor fuel is first received by an unlicensed distributor, the supplier of the fuel shall be liable for payment of the tax due on the fuel. If the motor fuel is sold by a person who is not licensed as a supplier, then (i) the terminal operator and (ii) the person selling the fuel shall be jointly and severally liable for payment of the tax due on the fuel . . . .

Va. Code Ann. § 58.1-2219(B) (2004).

There is no indication in the record that the trucking companies employed to pick up the fuel were unlicensed distributors or that the supplier was unlicensed; therefore, the relevant inquiry in determining which entity was legally responsible for the tax and fee at issue here is which entity "first receive[d] the fuel upon its removal from the terminal."

The bankruptcy court made a factual finding, which must be reviewed under the clearly erroneous standard, that the trucking companies that picked up the fuel from Petro's suppliers were acting as Lambert Oil's agents rather than as Petro's

-12-

agents. Given that the parties stipulated that an employee of Lambert Oil would instruct a trucking company to pick up the fuel at Petro's supplier and ship it to Lambert Oil, it cannot be said that the bankruptcy court's conclusion that the trucking companies were acting as Lambert Oil's agents is clearly erroneous.

After making this factual finding, the bankruptcy court concluded that Lambert Oil was the party that "first receive[d] the fuel upon its removal from the terminal" and is legally responsible for the payment of the tax and fee under Virginia law. The statute's plain language supports this conclusion, but I find that this determination does not resolve the question of whether the portions of the transfers earmarked for tax and fee constitute payments for antecedent debts. Regardless of which party is technically responsible under Virginia law for payment to the state of the tax and fee, Lambert Oil incurred a debt to Petro for those amounts as a result of their agreement.

The Bankruptcy Code defines the term "debt" as a "liability on a claim," and defines "claim" broadly as either a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgement, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

-13-

11 U.S.C.A. § 101(12), (5) (West 2004 & Supp. 2006). Under the terms of the agreement here, Lambert Oil was permitted to purchase fuel on Petro's credit accounts, and Lambert Oil would pay Petro for fuel and the tax and fee imposed thereon before the first date that the fuel supplier would electronically debit Petro's bank account. In other words, each time Lambert Oil purchased fuel on Petro's account, Petro undertook the burden of having its account with the supplier charged for the cost of fuel as well as the tax and fee with the understanding that Lambert Oil would in turn pay this amount to Petro. As a result of this agreement, each time Lambert Oil made a fuel purchase, Petro gained a "right to payment," and thus a "claim," from Lambert Oil for both the fuel and the tax and fee. Lambert Oil incurred a corresponding "liability on [that] claim," and thus a "debt." Therefore, Lambert incurred a debt to Petro no matter which party was legally liable under Virginia law for payment to the state.

Having concluded that at the time of each payment Lambert Oil owed a debt to Petro for the tax and fee amounts as well as the cost of the fuel, the next question in determining whether the payments for the tax and fee are preferential transfers is whether the debt was "antecedent." I find that it was indeed an antecedent debt within the meaning of § 547(b).

While the Bankruptcy Code does not define "antecedent debt," courts have defined it "as a debt which is incurred prior to the relevant transfer." *Smith v. Arthur Andersen L.L.P.*, 175 F. Supp. 2d at 1202 (citing *Intercontinental Publ'ns, Inc. v. Perry (In re Intercontinental Publ'ns, Inc.)*, 131 B.R. 544, 549 (Bankr. D. Conn. 1991) and *Pereira v. Lehigh Sav. Bank (In re Artha Mgmt., Inc.)*, 174 B.R. 671, 677 (Bankr. S.D.N.Y. 1994)). The bankruptcy court reasoned, and Petro argues on appeal, that any debt owed to Petro to cover the applicable tax and fee was not incurred prior to Lambert Oil's transfers of the funds because in each instance the transfers occurred before the taxes were due under Virginia law. Admittedly, § 547(a)(2) provides that "a debt for a tax is incurred on the day when such tax is last payable without penalty, including any extension." 11 U.S.C.A. § 547(a)(2). However, this analysis fails to recognize that the relevant inquiry is when Lambert Oil incurred the debt to Petro for the tax and fee amounts, not when the ultimate debt to the state was incurred.

Courts have generally considered a debt to be "incurred" on the "date that the debtor becomes 'obligated to pay for the services or goods.'" *Grogan v. Liberty Nat'l Life Ins. Co. (In re Advance Glove Mfg. Co.)*, 761 F.2d 249, 252 (6th Cir. 1985) (quoting *Sandoz v. Fred Wilson Drilling Co. (In re Emerald Oil Co.)*, 695 F.2d 833 (5th Cir. 1983)). I find that Lambert Oil became obligated to pay Petro for the fuel

-15-

acquired and the associated tax and fee whenever it initiated a purchase of fuel on Petro's credit account with its supplier. Thus, because each time Lambert Oil paid Petro it was after the fuel had been acquired, the payments were in satisfaction of an antecedent debt.

Petro cites *Rosenberg v. Rollins, Burdick, Hunter Co. (In re Presidential Airways, Inc.)*, 228 B.R. 594 (Bankr. E.D. Va. 1999), for the proposition that the debt in question could not be incurred until Petro actually paid the tax and fee, but a close reading of this case reveals that it does not support this conclusion. In *Rosenberg*, the bankruptcy court held that the debtor's insurance broker would not have had a claim against the debtor because the broker "had not rendered services to the debtor at the time the payments were made." *Id*. at 598. In the present case, Petro had "rendered services to the debtor" by allowing Lambert Oil to purchase fuel on its credit account with the supplier prior to Lambert Oil's payment to Petro. Thus, Petro would have had a claim against Lambert Oil at the time of each transfer and the transfers were thus on account of an antecedent debt.

Having concluded that the portions of the transfers covering the Virginia tax and fee were "on or on account of an antecedent debt owed by the debtor before the transfer was made" and thus a preferential transfer under § 547(b), I must now

Case 1:06-cv-00045-JPJ   Document 11   Filed 08/03/06   Page 16 of 21   Pageid#: 462

consider whether Petro would be entitled to the protection of § 550(b) as suggested by the bankruptcy court.

Section 550 provides, in pertinent part, that:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 547. . . of this title . . ., the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from–

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section [subsection] (a)(2) of this section from–

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

11 U.S.C.A. § 550(a)-(b).

Because Petro was the initial transferee of the funds, rather than an immediate or mediate transferee of such initial transferee, it is not entitled to the protection of § 550(b). An initial transferee is an entity that receives a transfer and that first exercises dominion and control over the property transferred. *See Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Props. Ltd. P'ship)*, 99 F.3d 151, 156

-17-

(4th Cir. 1996). As the Trustee points out in his brief, Petro's bank account statements show that each payment made by Lambert Oil to Petro, covering the fuel amounts and the tax and fee, was deposited into the business account of Petro over which Petro had dominion and control. Therefore, § 550(b)(2) is inapplicable to the facts in hand and the Trustee can recover these amounts absent any defenses Petro may have under § 547(c).

C.

Contrary to Petro's argument on appeal, the bankruptcy court was correct in concluding that Petro failed to meet its burden of proof required for the "contemporaneous exchange for new value" defense of § 547(c)(1). Section 547(c)(1) provides that the Trustee may not avoid a transfer that is otherwise avoidable as a preferential transfer "to the extent that such transfer was (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange." 11 U.S.C.A. § 547(c)(1). The critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange, and the determination of such intent is a question of fact. *Creditors' Comm. v. Spada (In re Spada)*, 903 F.2d 971, 975 (3d Cir. 1990).

-18-

In the instant case, the bankruptcy court specifically found that the parties did not intend the use of Petro's credit standing to obtain fuel product for Lambert Oil to be a contemporaneous exchange for new value because it was clearly intended to be a credit arrangement whereby Petro would extend credit to Lambert Oil. Given that Lambert Oil did not pay Petro at the time the fuel was received, but rather simply agreed to pay before Petro's account was first drafted and actually paid after this first draft on most occasions, the bankruptcy court's determination that this was intended to be a credit transaction and not a contemporaneous exchange for new value cannot be said to be clearly erroneous. While Petro did identify three cases[3] in which various courts determined that transfers arguably comparable to the transactions at issue in the instant case were intended to be contemporaneous exchanges for new value, this does not mandate a conclusion that the bankruptcy court here committed clear error when it came to a different conclusion on the unique facts of this case.

D.

The bankruptcy court's decision that Petro also failed to meet its burden of proof required for the "ordinary course of business" defense set forth in § 547(c)(2)

---

[3] *Pine Top Ins. Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 969 F.2d 321 (7th Cir. 1992); *Tyler v. Swiss Am. Sec., Inc. (In re Lewellyn & Co.)*, 929 F.2d 424 (8th Cir 1991); and *Peltz v. Hartford Life Ins. Co. (In re Bridge Info. Sys.)*, 321 B.R. 247 (Bankr. E.D. Mo. 2005).

must also be upheld. Section 547(c)(2) provides that the Trustee may not avoid a transfer that is otherwise avoidable as a preferential transfer "to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was (A) made in the ordinary course of business or financial affairs of the debtor and the transferee or (B) made according to ordinary business terms" 11 U.S.C.A. § 547(c)(2).

In the present case, the bankruptcy court found as fact that the parties' arrangement was not in the ordinary course of Petro's business and thus that the defense failed. While this may be viewed as a mixed issue of fact and law, "[t]he better reasoned decisions hold that a debt will not be considered incurred in the ordinary course of business if creation of the debt is atypical, fraudulent or not consistent with an arms-length transaction." 5 Collier on Bankruptcy ¶ 547.04[1][a] (15th ed. rev.). Given that Petro allowed the use of its credit for the benefit of Lambert Oil without receiving any benefit, it is clear that this was not an arm's length transaction. Thus, I find that it was not "incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee." 11 U.S.C.A. § 547(c)(2). Accordingly, Petro does not qualify for the ordinary course of business defense.

-20-

IV.  CONCLUSION.

For the foregoing reasons, I will remand the case to the bankruptcy court with instructions to add $17,113.11, the amount of the transfers attributable to the tax and fee, to the $44,832 already awarded to the Trustee.

Appropriate final judgments will be entered.

DATED: August 3, 2006

/s/ JAMES P. JONES
Chief United States District Judge